UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 24-77-DLB

MICHAEL TINDALL TODD                                           PETITIONER


v.                      **MEMORANDUM OPINION AND ORDER**


DAVID LEMASTER, WARDEN                                        RESPONDENT

**\*\*\* \*\*\* \*\*\* \*\*\***

Federal inmate Michael Todd has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging the imposition of disciplinary sanctions against him.  (Doc. # 1).  The Court must screen the petition pursuant to 28 U.S.C. § 2243. *Pillow v. Burton*, 852 F. App'x 986, 989 (6th Cir. 2021).

In January 2024, a prison guard found a plastic baggie in Todd's boot that contained a small, card-shaped piece of paper.  Todd became nervous and essentially admitted to the officer that the paper was infused with drugs.  The paper was later tested with "NIK" field tests A and G, which collectively returned a positive result for cocaine. The officer issued an Incident Report charging Todd with Prohibited Act Code 113 for possession of drugs.  *See* (Doc. # 1-1 at 1).  Officer Adkins, serving as the Unit Disciplinary Committee ("UDC"), referred the matter to a Disciplinary Hearing Officer ("DHO") for adjudication in light of the severity of the offense.  *Id*. at 2.

At the DHO hearing, Todd denied the charge, stating that "it was just a piece of paper," but he offered no other evidence  (Doc. # 1-1 at 4).  The DHO found otherwise

1

based on the officer's statements and the positive NIK test. *Id*. at 5-6. The DHO imposed various sanctions, including the loss of good conduct time. *Id*. at 7.

Todd promptly appealed his sanction, complaining that the Incident Report did not expressly state that after he was "packed out" of his cell to be taken to the segregation unit, he was briefly returned to his cell for 20 minutes before he was then taken into the segregation unit. This, he claimed, was because the NIK test did not yield a positive result for narcotics at all. Todd also asserted that the NIK test is only suitable to test powder, not paper. *See* (Doc. # 1-1 at 8-14). Second, Todd complained that the UDC hearing was conducted only by one officer, and that he did not receive certain forms advising him of his rights before the DHO. Third, Todd asserted that during the DHO hearing he was not given the opportunity to review the evidence against him. *See* (Doc. # 1-1 at 15). The Regional Director rejected Todd's factual allegations and legal claims, and denied the appeal. *See* (Doc. # 1-1 at 16-17). Todd asserted the same arguments on appeal to the Central Office, which again rejected them. *See* (Doc. # 1-1 at 18-20).

In his habeas corpus petition, Todd again alleges that the fact that he was returned to his cell after he was "packed out" proves that the NIK test was not positive for drugs. Indeed, he alleges that other BOP officers "who refused to go on the record" told him that the NIK test came back negative. The unnamed officers then allegedly told Todd that the paper found in his cell was then tested in an ion scanner, which Todd asserts without explanation was improper. Todd again claims that it was impermissible for a single officer to hold the UDC hearing. *See* (Doc. # 1 at 5, 10). He requests that the disciplinary conviction be expunged and the sanctions rescinded. *Id*. at 8.

Todd's habeas corpus petition will be denied because the materials he filed in support of it establish that he was afforded all of the due process to which he was entitled. When a prisoner believes that he was deprived of sentence credits for good conduct without due process of law, he may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241.  *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973).  Before such credits are taken, due process requires that the inmate be given:

(1)    written notice of the charges against her at least 24 hours before the administrative hearing on the charges;

(2)    a hearing before an impartial decision-maker;

(3)    assistance from a competent inmate or staff member, if the inmate requests one and she will likely be unable to present a defense because she is illiterate or the case is too complex for her to comprehend;

(4)    the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

(5)    a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).  The Bureau of Prisons has included these and even broader protections by regulation.  *See* 28 C.F.R. §§ 541.5 - 541.8; BOP Program Statement 5270.09 (Nov. 2020).  However, an agency's failure to strictly comply with its own policies does not violate due process.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause.").

Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record.  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472

U.S. 445, 454 (1985).  Because the quantum of evidence required to meet that standard is minimal, the reviewing court should not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence.  Instead, it need only confirm that "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board."  *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013).

The Court preliminarily notes that certain assertions underlying Todd's claims are incorrect.  First, the NIK "polytesting" instructions indicate that while the tests are designed primarily to analyze powders, they can in fact be used to test liquids.  The directions state that a liquid can be tested by soaking a ½" square piece of paper (ideally "unscented, uncolored filter paper") in the liquid, and then letting it dry thoroughly before testing the paper in the NIK kit.  *See* (Doc. # 1-1 at 13).  The instructions do caution that brown paper, hand towels, or newsprint should never be used as a test media.  *See id*. Since drug-soaked paper, like the kind found secreted in Todd's boot, is a prevalent method of sneaking drugs into a prison, the NIK tests are a viable method for the BOP to detect narcotics under the right conditions.  Second, Todd's assertion – that the only plausible explanation for returning him to his cell after he was "packed out" is that his drug screen was negative – does not withstand scrutiny.  Such delays are routine in the prison environment and can be caused by any number of factors, including the need to complete transfer paperwork, ensure cell availability in the segregation unit, obtain additional staff to escort the prisoner to the new unit, taking an inventory of and packing personal items not permitted in segregation, and searching the inmate prior to placement in a secured cell.  Nothing in the brief administrative delay is indicative of a negative drug screen.

4

Independent of the foregoing, Todd's claims do not indicate any violation of his due process rights.  First, Todd's assertion that a single officer cannot conduct a UDC hearing is incorrect.  Todd was charged with a 100-level "Greatest Severity" offense, which requires the disallowance of good conduct time upon conviction.  *See* 28 C.F.R. § 541.4(a)(2), (b)(1).  Because only a DHO, not a UDC, can impose such a sanction, the UDC automatically refers the matter to a DHO for review and decision.  *See* 28 C.F.R. § 541.7(a)(4), (f).  In such instances, the UDC "hearing" is brief and *pro forma* to advise the inmate of the referral, and so is conducted by a single officer.  *See* BOP Program Statement 5270.09 Ch. 4 at p. 24 ("Only one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO.").  And, in any event, due process does not require a separate UDC hearing at all.

Second, Todd's unsupported allegation that the NIK test was negative rather than positive is insufficient to warrant habeas relief.  The DHO's decision finding him guilty of the offense need only be supported by "some evidence," a *de minimis* standard that was plainly satisfied.  As noted above, the Court's role is not to re-weigh the evidence but only to determine if there is *any* evidence that would permit a rational factfinder to reach the same one arrived at prison officials.  *Hill*, 472 U.S. at 454-55.  Here, the DHO relied upon the chain-of-custody form, photographs accompanying the Incident Report showing the contraband and the NIK test results, and a memorandum from the officer who tested the confiscated paper and confirmed a positive test result.  *See* (Doc. # 1-1 at 5).  The foregoing was more than sufficient to provide "some evidence" that Todd had possessed drugs in contravention of prison policy.

Accordingly, the Court **ORDERS** as follows:

1.      Michael Todd's petition (Doc. # 1) is **DENIED.**

2.      This matter is **STRICKEN** from the docket.

This 6th day of November, 2024.



Signed By:
*David L. Bunning*
United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\Todd 0-24-77 Memorandum.docx